Good morning, Your Honor. Ben Coleman for the appellant, Artak Ovsepian. I believe the threshold issue in this appeal is whether, when evaluating the validity of the 1028A conviction, this court is limited to the possession theory that was instructed to the jury or whether this court can look to a different use forgery theory that the district court relied upon and the government heavily relies upon in its brief. Our position is that, based on a solid line of authority, including this court's decisions in Avery and Romero, and the Supreme Court's opinion in Boozley, that this court is limited to the possession theory that was instructed to the jury. The government doesn't really, I think... Even if we're limited to possession, are we limited to HT or would we look at the possession of other patients or victims? Well, I believe that you are limited to HT. Before explaining that, I would note that the government has not relied on any other victims in their brief, so I think they've waived that argument. There's been no discussion of any other victims that was presented to the jury, and that was simply a possession theory based on HT. So for both of those reasons, both the waiver by the government and, we believe, under Avery and Romero, this court is limited to a HT possession theory. So suppose we agree with you on that much. Now what? Dubin comes down and there's no finding in the record that Sepien's possession of HT's identification materials was at the crux. There's no finding that it was at the crux of the medical fraud in this case. What do we do? Correct. Well, I guess the court has two options. Number one would be to remand for further analysis, and number two would be to decide the issue on your own. We'd urge the court to decide the issue on your own simply because of a matter of timing. Mr. Osepian has already served about 10 years in custody, and his release date is now actually less than two years out. So if the case is sent back and then we have to litigate it below, he's almost going to complete his time by the time that happens. What do we have in the record that we could make that determination? I mean, do we have any specific information about what the nature of the ongoing fraud was when Osepian joined the conspiracy? Well, the court does, when Osepian had joined the conspiracy, they had already used HT's information to get her prescription. He came into the conspiracy after she received her prescription. The government's only argument at trial was that the mere possession of her Medicare, a copy of her Medicare card in her file, that that was their only theory as to how he was guilty of 1028A. So I think that the court can just simply, that is their theory of liability at trial. We believe that theory is invalid under Dubin because certainly the mere possession of a copy of her card in her file was not at the crux of the underlying fraud. And if that could be a valid theory, then we're now just back to a pre-Dubin world because then every single healthcare fraud case would involve a 1028A because all medical practices keep a copy of the person's insurance card in their file. So that was exactly the result that Dubin tried to avoid, which is that every single healthcare fraud would become a 1028A. So we think that the court could simply look at their theory, which was that the mere possession of a copy of her card in her file was good enough, and say that that theory is invalid under Dubin, and then reverse the 1028A conviction. There are two wrinkles, I think, with that argument that I'm wondering about. One is, I think the case, lining case is cited about when a concealment is in furtherance of a conspiracy. A lot depends on the timing and whether the object of the conspiracy has been achieved or not. And it seems to me clear from this record that there was continued activity in And that, so there's possession, it seems to me, in furtherance of identity theft that postdates Mr. Obseffian's entry into the conspiracy and concealment that furthers the object of the conspiracy. So I think there's a complicated question there to me of whether that constitutes possession during and in relation to the furtherance of the conspiracy to commit healthcare fraud, or are we talking about possession only with respect to the specific misrepresentation about who was obtaining H.T.'s prescriptions? There's a legal question there to me. And then, secondly, I think under the, my understanding of when we're doing an actual innocence inquiry is that we're not necessarily limited to the trial record, and that both parties can introduce new evidence, which there's a question in my mind of whether remand is necessary for the, for both sides to have an opportunity to introduce evidence of possession that would postdate Mr. Obseffian's entry into the conspiracy. Well, I guess on the latter point first, you are correct that in an actual innocence inquiry, the government can introduce other evidence to show that he wasn't actually innocent. They didn't avail themselves of that below. They didn't submit any additional evidence. They haven't argued on appeal in their brief that they have additional evidence. So I think they've waived sort of any reliance on any additional evidence. To get to your first question about the ongoing possession, I don't know that if the court were to somehow find it simply continuing to possess the documents, even if there's an ongoing conspiracy related to other people, other, you know, patients or victims, that that somehow would be sufficient. I still think that we're, we're then back going back to a pre-Dubin world where all medical offices are going to maintain files, I mean, continuously of their patients. I think you're obligated to maintain a file. I'm not sure that that necessarily follows because we still have a requirement here that misrepresentation about who is receiving the services be at the crux of the alleged fraud. And it seems to me there's at least with respect to some of the victims, including HT, that there was a misrepresentation about who was receiving her prescriptions and then the subsequent misrepresentation about who signed that retraction letter. Right. And I guess then we come back down to, you know, the indictment did not allege a forgery. There was no forgery allegation in the 1028 eight count in the indictment. The government, the jury was only instructed on a possession theory trial, and the government only argued that the mere possession of her card was what triggered the 1028 violation. So our position is that going to that retraction letter, that was not the basis of the conviction and the court can't rely on it now. Well, I'm not suggesting that the use, the signing of the retraction letter is itself what is, there's possession, right, of her identifying means of identification for the purpose of being able to use it. I mean, I don't understand how else possession could be criminalized here, except if, you know, I understand there's a sort of stealing acquisition, you know, how do they acquire the information? But then it seems to me it would reach possession for the purpose of the unlawful use. So to me, it seems that we have a couple instances, several instances of unlawful use that I guess would be evidence of the intent to possess for the unlawful purpose. And then if this stealing element is satisfied, why wouldn't that count as possession? Well, I, you know, the Supreme Court, I guess, wasn't very clear on what they meant by crux, but I think possessing a copy of her card in her file was not at the crux of this fraud. I mean, the crux of the fraud was obtaining medically unnecessary prescriptions. And Mr. Osepian wasn't even in the conspiracy at the time that they obtained a medically unnecessary prescription. But at this point, if possession of a copy of a card, I mean, that would just open up virtually every... So that you can misrepresent who was receiving the services. I mean, we don't have a lot of clear guidance from the court about whether that's included, but that seems to me at least one plausible reading of the scope of the statute. Well, I guess we would argue the possession needs to be sort of simultaneous with whatever the fraud that's occurring, that some possession that occurred, you know, a year and a half later just simply in the file isn't good enough. That would be our position. But I think in order to eliminate a pre-Dubin world where every healthcare fraud conspiracy then turns into a 1028A, this court should not be looking at possession that broadly. I see I've gone over my time. Can I ask one more question? Sorry. I wanted to follow up on your answer to Judge Wardlaw's earlier question where you were talking about our options here to figure out the crux. One was remand and the other was to decide it ourselves in part because of the timing. Do you think that it's a factual question? I'm interested in your idea that remand is an option because I'm wondering if you think there are fact findings that need to happen or if this is really a legal question. I don't think that there are fact findings that need to happen. The only reason why I had mentioned remand was if the court wanted the benefit of the district court's analysis, I guess, first before deciding the issue in the first instance. That's why I don't think the court needs to do that. I don't think the court needs to remand. I think that the court can look at the trial record, the jury instruction, and the theory that was presented to the jury and decide it on its own. Certainly, I guess, the court has the option if you wanted the district court, which generally is more involved in the case and the trial proceedings, to look at it first. You can. I would note that the district judge in this case is not the judge that presided over the trial because Judge Otero presided over the trial and he retired. I don't know that you're going to get the benefit of the trial judge weighing in. It's really a legal question that I think the court can decide on its own. One further follow-up on that. If we were to remand, and I'm not sure given the situation that that's the right thing to do here, but if we were and we think the record as it stands is insufficient to support the conviction, is there a mechanism for vacating the sentence and releasing your client on bond or bail pending? Yes, Your Honor. I think if the court agrees with my argument that the conviction is invalid, what I think what this court did in Avery is that it vacated the conviction and then the government has an option at that point. They can actually try to retry the 1028A case charge if they want. That's what this court said in Avery was that the conviction is vacated and then either you can go to a resentencing or you can go to a trial. Without the conviction or the government has the option of retrying the 1028A charge. I think that would be the appropriate procedure. What if we weren't sure if it had to be vacated though? If the idea was that the remand was necessary to do fact-finding to figure out if the conviction was needed to be vacated? What do we do then? Right, well then it would just be a remand for the district court to evaluate the record and I guess if Your Honor is suggesting perhaps additional evidence that would be introduced in that scenario, then the court would make a ruling, the district court would make a ruling. I would note though that we have also raised jury instruction claims. We believe that the count should also be vacated based on the defective jury instruction. But don't you need the actual innocence to get over cause and prejudice? I'm not sure you can get out of this innocence issue. Well, I agree with Your Honor that one way to get around default for the jury instructions is actual innocence. We've also argued ineffective assistance of counsel as a way to get around the default as well. But that requires anticipating Dubin as defective performance. Well, our position was that Dubin relied just on the plain language of the statute, its title, and its context. But I understand that it was a decision that perhaps we're all struggling with right now. But we think that the defense could have made those objections even before Dubin and that that would have been the appropriate thing for a trial counsel to do. To put a finer point, and I guess to make sure we get this question answered, if we think remand is necessary just to determine whether there's actual innocence here, is there a mechanism for dealing with the potential mootness problem and releasing your client on bail pending this decision? Well, if the court were to remand, I would certainly appreciate if the court were to suggest that bail would be appropriate or something so that the district court understands that that's the situation we're in. That's number one. Number two, a difficulty I'm going to have with bail is Mr. Osepian's immigration status. So I don't know whether I'm going to be able to get him out on bail or not. I mean, we would obviously certainly try, but that could be a potential problem for bail. And I just wanted to note that. Thank you, Your Honor. All right. Thank you, counsel. Good morning, Your Honors, and may it please the court, Faraz Mohammadi for the United States. Your Honors, defendant has simply not met his burden to show actual innocence or ineffective assistance of counsel, and for that reason, this court should affirm the district court's denial of his habeas petition. Unless Your Honors have any specific questions, I'd like to start by addressing this notion of how broad the actual innocence inquiry is. The standard for actual innocence is whether the defendant is actually innocent of the crime charged. And the inquiry is focused on the substance of the trial record, not the substance of the jury instructions. That's what the Supreme Court held in Boozley. That's what this court held in Stevens v. Herrera. And if you look to the trial record, first of all, if you look to the charging document, the indictment, it clearly charges the defendant under all three prongs of 1028 Big A, possession, use, and transfer. And at the very least, the trial record supports convictions under both the possession and use prongs of 1028 Big A. The government chose to pursue possession. There was no plea deal here that led to abandoning charges or anything. So why would we let you bring back use at this point? I don't understand how any case says that in this posture, you would get to go back to use at this point. Your Honor, as an initial matter, even if the inquiry was limited to just possession, our position is that the trial record sufficiently supports that. But with respect to your question, if you look to Boozley, the Supreme Court specifically looked to the charging document, the indictment, to see what the crime was that was charged. And there it said because the indictment charged both a use and carry theory for 924C, that was the basis of which the actual innocence inquiry would go. But there was a plea deal, right? There was no trial in that case. No, but if you look to, Your Honor, if you look to Stevens v. Herrera, I believe there was a trial in that case. And in that case, the court looked to the trial record. And again, the court made very clear in Stevens that improper jury instructions do not somehow negate the actual innocence inquiry to the crime charge. But you don't go beyond the actual crime's charge. You can look at other evidence, right, and fix the jury instructions, but you can't add to the charges that were the topic of the jury instructions, can you? It's not adding to the charges. The charges were in the indictment, Your Honor. It was both use and possession. Part of the problem here is the crime of conviction appears to be just for possession, right? So at least by the time there was a conviction, it said convicted for possession, not possession and use or possession or use. So then that seems to put us in a completely different posture from any of the precedents cited. But also, at least as a matter of legal principle, the crime of conviction was for possession. So how do we now, if the question is can that conviction stand, how do we introduce a whole other alternative count? Because the philosophy behind actual innocence, as this court held in Avery, is, you know, you should not have a defendant in custody for a crime that's prescribed by law. And the only narrowing that the Supreme Court did in Boosley was saying, well, it has to be based on what was actually charged by the government in the charging document. The government can narrow the indictment, and it can supersede the indictment. So I don't see how, given that the government narrowed the indictment through the course of the trial in this case, how you can argue that that is the controlling document at this point. Because it was clearly narrowed in the course of the trial, and he ultimately was convicted just of possession. So why don't you give us your best argument as to why the possession in this case was at the crux of the Medicaid fraud. Of course, Your Honor. Whatever that means. Right. And that goes to the limitation set by the Supreme Court in Dubin. In Dubin, the court made specifically clear that in fraud context, if the deception goes to who was receiving the services as opposed to how and when the services were being provided, then that goes to the crux of the underlying predicate offense. And here, the entire fraud scheme of the clinic went to who was receiving the prescriptions. If this was a case, for instance, where the clinic and the pharmacy were prescribing brand-name drugs and billing for brand-name drugs, but were actually distributing generic drugs to the patients, that would be more of a how and when the services were provided. There's a little bit of a complication in this case because part of the conduct went to did not go to who. I think the ones where the beneficiaries themselves were showing up and getting the drugs and then handing them back, I would have a hard time saying there was common understanding of identity theft here. What I think we're limiting to is HT and maybe some of the other potential victims, though it's not clear to me why it got narrowed to HT, but it seems the government did narrow it. There hasn't been an attempt to show identity theft with respect to any other victim at this point than HT. So I think I'm looking at HT, and that part of the conspiracy does seem arguably within the crux under Dubin. I think it does matter because there is some conduct in the conspiracy that wouldn't fit and some that does. To some extent, I think that affects our analysis here. Yes, Your Honor, and so the focus should be on those sets of victims like HT that were brought in who did not know that their means of identification were being used to prescribe fraudulent prescriptions and then being carried out by the pharmacy. So with respect to that aspect of the scheme, which should be the focus because that underlied the aggravated identity theft count, there the crux of the scheme very much went to who was receiving the prescriptions as opposed to how and when. And Gladden is particularly on point, which we cite. There the pharmacy was using patient names and means of identification to bill for medications that never actually made it to the patients. In fact, the patients had no idea that their means of identification were being used for that purpose. And was that aspect of the conspiracy still happening when Obsefian joined the conspiracy? So we would contend that Mr. Obsefian was part of the conspiracy, even when the means of identification was being used to bill and falsely prescribe medications. So if you look to the trial record, during his direct testimony, Mr. Obsefian, and this is at SCR 162 to 172, admits that he joined the clinic in early spring of 2010 and that his girlfriend and his wife, sorry, his sister and his wife, his sister who he admits was a co-manager, leader of the clinic with him, they were part of the clinic for years prior to that. And that actual billing for the victim, HT, occurred in late March of 2010 and May of 2010. So a reasonable juror, particularly given the inconsistent statements that Mr. Obsefian made during trial, could find that Mr. Obsefian was involved in this conspiracy involving the who was receiving false prescriptions as early as early spring before. It seems to me like it's a potentially contested fact, right? Because he says, I was sort of hanging around, but I didn't know, I didn't actually start knowingly participating in the conspiracy until the summer. So is your argument that may be what he claims, what a jury, a reasonable juror could find he entered earlier? Yes, a reasonable juror can find he entered earlier, yes, Your Honor. But at the very least, he was part of the conspiracy during the first audit that happened in October 2010. Right, and that's what, so as I understand what the government's arguing, is that the maintenance of the HT's ID in the file was part of the crux of the fraud because that's how they would get through the audit. Am I right about that? Yes, Your Honor. Okay, that would help them get through the audit. But I don't see, so what troubles me about that argument is that I don't see how the audit is at the crux of the fraud. To me, the fraud is submitting the stuff to Medicaid and getting reimbursed for a false claim. Your Honor, the conspiracy, that was one part of the conspiracy, but the conspiracy included maintaining the facade of a legitimate clinic. In fact, the indictment, the overt acts in the indictment, actually cite conduct in relation to the audits themselves because the clinic knew that in order to conceal its fraud, in order to continue the fraud, they needed to be able to maintain the facade and contain all these patient files. And the best evidence of that is that the fraud continued after the October 2010 audit. But if the fraud at that point that continued was this kind of fraud that didn't involve identity theft, like you answered with Judge Sung, where the people were actually going and picking up their own name prescriptions and then handing them over, I don't know, why do you get to count it as the same conspiracy? Well, because it gave them the ability to continue that fraud, Your Honor. And just because the conspiracy stopped because of the surveillance and law enforcement getting involved didn't mean that the entire premise of maintaining the files was to be able to continue the fraud, whether it be having people driven to the clinic under false pretenses to misuse their IDs to bill for prescriptions. So, I mean, on that theory, like paying your electric bill is also, I mean, is that part of the crux of the conspiracy to just keep the clinic open? Well, no, because paying the electric bill, Your Honor, would not go to, you know, the part of the deception as to who is receiving the services. The entire point of maintaining the files, I mean, if they just wanted to bill and take their money and leave, then there's no reason to maintain the files. In fact, the files would be evidence of the fraud that they probably would not want to keep in their clinics. But the whole purpose of maintaining the files is to conceal the fraud and be able to continue to perpetrate the fraud in the event of an audit, which is anticipated given the fact that there was a large number of prescriptions coming out of this clinic, going to one specific pharmacy, which was Huntington Pharmacy. And so the clinic had, you know, reasons to anticipate an audit, which is why they kept the files specifically squarely in the office and to allow kind of auditors to come in. And if they were to come in and they can come in unannounced, which is what one of the auditors testified to, they would have everything ready to go, excuse me, to be able to deceive the auditors in that context. So the whole idea is to keep the facade of the clinic, whether it's to perpetrate the fraud of bringing in the homeless individuals to be able to give them the, excuse me, have them agree to take the prescriptions and then they could sell it on the black market, or in the alternative, having people come under false pretenses to take their identification. I think it might be a little bit overbroad to say just maintaining the files is enough here to satisfy the crux element, where I think there's a stronger case, but I'm still not sure, is that they also used her identity again to pretend to be HT, right, in the retraction letter. So there was a misrepresentation again as to who was doing something. So I think that falls within the crux of what we think of as common identity theft, a common understanding of identity theft. There's still then a question to me of whether that act, use of identity theft, and the possession related to that use, whether that can count here. I think it could count if the predicate crime includes the entire conspiracy, including the acts that don't fall within Dubin, unless you have proof that there was continued forms of health care fraud that satisfied Dubin post-Osepian's clear entry into the conspiracy. If we're limited only to actual acts of health care fraud, it's not clear to me that that involved misrepresentation about who's receiving the services. It's not clear to me that any of that happened after Osepian entered the conspiracy. Am I making sense at all? It's complicated because I think there are two types of health care fraud happening here, some of which satisfy Dubin, some of which not, some of which clearly or unclearly happened, may or may not have happened before Osepian or after he entered the conspiracy. So is there any acts of health care fraud that clearly satisfied Dubin aside from the retraction letter that clearly post-date Osepian's entry? Yes, and I guess the clarification that needs to be made is that the possession of the files themselves is part of the conspiracy. So whether additional fraud continued after that possession, specific to the type of fraud regarding victim HT, I don't think goes to the question of whether the crux of why the possession was happening was to continue this notion of who was receiving the prescriptions as opposed to how or when. So the mere fact of maintaining these patient files to conceal the cover-up, to be able to continue in fraud in whatever form, goes to this notion that it goes to the crux of the scheme of being able to maintain it. Well, I think if we disagree with you there because we think Dubin requires more, then what's your best argument for some of that activity happening after the summer of 2010? I think then we would rely, Your Honor, on the notion that the trial record does support a finding by a reasonable juror that Mr. Osepian was part of the conspiracy from the beginning in early spring of 2010. That his entry was earlier. His entry was earlier. I have some sympathy for the government here because obviously you're trying to fit a pre-Dubin case into Dubin and you're caught unawares by that decision coming down. So that's a difficult thing to do. So I do have some sympathy and I'm just wondering what implications Dubin has across the board for all the cases that have been tried for Medicare, Medicaid fraud pre-Dubin that are pending on appeal or that habeas proceedings are going forward. But that being said, suppose we disagree with you and we just decide that this sentence has to be vacated in a post-Dubin world. Would you retry this case or have you thought about retrying this case? That would be a decision that our office would have to make in accordance with our office policies. So no decision has been made as to that issue. But we would contend that the trial record does support the convictions under the actual innocence inquiry here. The broader standard in actual innocence notion. So we don't believe that even remand is necessary. So you're standing on the trial record and there's no additional evidence you would want to bring in? That would be a question for the trial team going forward. But as of now. But just a remand. So not a whole new trial. What if we were remanding for the trial court to determine the actual innocence issue? And if the actual innocence inquiry, I believe, does permit the court to look at new evidence introduced by either side. So they're not limited to the trial record. Your friend on the other side argues the government has essentially had that opportunity and waived it. I guess that would be the first question. Have you waived it? Or on remand, do you think you would have the opportunity to introduce new evidence? And is there any? So if this case were remanded, I think we would have the opportunity to produce new evidence. As to the scope of that evidence, I think it would go to whether the clinic itself intended to engage in additional fraud with respect to the type of fraud involving victim HT. And that would just be a matter of looking at not only the trial record but the investigation as a whole to see if that evidence exists. But we would absolutely say that the government would have the opportunity to present that evidence. So I don't understand why you haven't. Because the actual innocence, whether it's at the trial court level or in front of us, already encompasses that. So if you have that evidence, why haven't you raised it or shown it to us? Well, because our position is, Your Honor, that the trial record as itself, as currently presented, does support the convictions under both the possession theory and what we argue was the use theory as well for actual innocence. But even just focused on possession, given that the timeline of Mr. Obseffian's involvement in the conspiracy, the fact that even the district court held that the maintenance of these patient files went to the center of the conspiracy to maintain the facade of a clinic and to defraud auditors, that in itself goes to the crux of who was receiving the services in this case with respect to the fraud. You want us to rule that, but say we don't. So if we don't, agree with you. I mean, I understand you're trying to get us to make that legal rule, and it would probably help a lot of cases if we did. But if we don't agree with you, then why should you have the opportunity to present more evidence that they were going to use H.T.'s name again to get more prescriptions or something when you haven't presented that evidence to us and you haven't asked for a remand to present that evidence? I don't understand what your basis is for saying now that you could present more evidence on remand. Well, Your Honor, we'd say because the inquiry for actual innocence goes to factual innocence, not legal sufficiency. So given that broad standard, that may give the government the ability on remand to present additional evidence, given that the purpose of actual innocence But didn't you need to ask for that with us? I don't see anything in your brief saying we actually have more evidence here that goes to actual innocence, so please give us a remand to present it. I don't see that. No, Your Honor, that is not in the briefing. And again, that's because our position in our briefing was that the trial record was sufficient. So if the court finds that that somehow precludes the government from being able to present more evidence on remand, then so be it. But our position would be that if the purpose of actual innocence is to actually go to whether the defendant committed a crime prescribed by law, then the government should have the opportunity on remand to actually present the court with that evidence to the extent it exists. And if we're going to decide the crux issue ourselves, it doesn't sound like you're ready to represent today that you're ready to submit more evidence to us tomorrow. You don't seem to know whether there's more evidence that we should consider. So we would have to decide the crux issue on what we have now, right? That's correct, Your Honor. I do have just one other question. There's at times references in the excerpts of the trial transcript that were provided to us to other victims of identity theft who are similarly positioned to HT. It's just entirely unclear to me why none of that evidence was included in our excerpts or why it got narrowed down to HT during instructions and forms. Is your position like are you conceding none of that would satisfy Dubin at this point and we should only be looking at HT or has any argument about the other victims been waived? No argument with respect to the other victims were made, and so we would say that the trial record was focused on victim HT, and so that was the basis there. So we would say that the court should focus on HT in particular. Again, if the court accepts the broader actual innocence inquiry that focuses just on the charging document and the trial record, then there may be an opportunity to look through the trial record to see what else there are with respect to other victims. Do you agree you had an opportunity to make that argument below already? Yes, Your Honor. Okay. And then can you just point me to what you think is the best evidence of an earlier entry by Osepian? Yes, Your Honor. So in the trial record at SCR 162 to 172, that is the timeline that Mr. Osepian sets forth regarding his involvement with the clinic. His own testimony. His own testimony. And there he says clearly that he became involved in the clinic in early spring of 2010. He admits later on that he was a manager of the clinic with his sister, and his sister and his wife were both involved with the clinic years earlier, 2005-2007. Given those facts and the fact that Mr. Osepian admitted that he was a manager of the clinic, his involvement in the early spring of 2010 could leave a reasonable juror could find that that means that he was involved with a conspiracy at that point. And HT's billing actually took place in, again, late March of 2010 and May of 2010 as well. Thank you, counsel. You have doubled your time. Thank you, Your Honor. Okay, thank you. And I'll give opposing counsel one minute or so for this. On these last factual points, I believe in his testimony the early spring was May of 2010 that he entered, and I think that was consistent with both the poll camera surveillance and the other surveillance that was conducted, and the cooperating witnesses' testimony. Can you give us sites for that? I don't have them right now, but I will submit a 28-J with those sites. Just on a broader, Judge Warlaw, you had asked the question, and I agree, it's a little difficult for the government coming in trying to defend a pre-Dubin case, post-Dubin. The one thing I would say, and so it is hard on the government, but, you know, these are cases now, and you're asking what's happening with other cases. I mean, these are cases where we're talking about an extra two years. So Mr. Osepian has already served 10, which is far more than anybody else served in this case. And so in most of these cases, the defendants already have gotten a big chunk of time on the underlying case, and it's really just a question should they get the extra two years. So even though it's difficult on the government, they're not losing that much. They're just losing a tail to the, you know, original sentence. And what we've tried to do in a lot of cases is we've tried to settle them. Some we've been more successful than others. Obviously, I was not successful here, but I don't think it's going to, you know, if the court were to, you know, give us a favorable Dubin ruling or really limit what the crux means, that it's going to, you know, be a parade of horribles for the government. It's not going to have that big of an effect. There are only a few cases in the pipeline. Some are being settled. Some aren't. But it's not going to be a major blow to the government. All right. Thank you, counsel. Okay, U.S. v. Osepian is submitted.
judges: WARDLAW, FRIEDLAND, SUNG